**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:10CR332-2 |
| | ) | |
| EPIFANIO FLORES | ) | |


**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter comes before the Court on a "Letter Motion for Translator and Counsel" (Docket Entry 405) filed by Defendant Epifanio Flores. (<u>See</u> Docket Entry dated Mar. 20, 2012.) For the reasons that follow, the Court will deny the instant Letter Motion.

<u>BACKGROUND</u>

On May 23, 2011, United States District Judge Thomas D. Schroeder signed a "Judgment in a Criminal Case" documenting the Judgment he orally imposed in this case on May 5, 2011, as a result of Defendant Flores's guilty plea to Conspiracy to Distribute Cocaine Hydrochloride and Marijuana in violation of 21 U.S.C. § 846. (<u>See</u> Docket Entry 329 at 1.) In addition to imposing a prison sentence of 150 months followed by a five-year term of supervised release (<u>id.</u> at 2-3), said Judgment requires Defendant Flores to pay a $100.00 special assessment and a $25,000.00 fine (<u>id.</u> at 5). It further provides that, based on an "assess[ment] [of Defendant Flores's] ability to pay, . . . [a] [l]ump sum payment of $25,100.00 [is] due immediately . . . ." (<u>Id.</u> at 6.)

On July 27, 2011, the United States served Defendant Flores with nine separately-numbered interrogatories (see Docket Entry 405, Attach. 1 at 4-6, 8) and six separately-numbered requests for production of documents (see Docket Entry 405, Attach. 2 at 2-3, 5). The interrogatories bear the caption of this case and advise Defendant Flores of the legal basis for and purpose of said discovery demand, i.e., "[p]ursuant to Rule 33 of the Federal Rules of Civil Procedure, the Federal Debt Collection Procedures Act of 1990, Title 28 U.S.C. § 3001 et seq., Rule 69 of the Federal Rules of Civil Procedure, and in order to enforce the Judgment of this Court May 5, 2011, against [him] in the amount of $25,100.00[.]" (Docket Entry 405, Attach. 1 at 1.) The document requests also bear the caption from this case and cite to Federal Rule of Civil Procedure 34. (See Docket Entry 405, Attach. 2 at 1.)

Both the interrogatories and document requests contain straight-forward instructions. (See Docket Entry 405, Attach. 1 at 3-4, Attach. 2 at 1-2.) The interrogatories ask (in a non-technical fashion) for information about Defendant Flores's interest in or transfer/sale of "any property valued at $500.00 or more" from August 25, 2010, to the present, as well as for information about three specific pieces of real property, his receipt of rental income, his receipt of monetary payments since August 25, 2010, and any money or property held on his behalf.

(<u>See</u> Docket Entry 405, Attach. 1 at 4-6.)[1]  The document requests seek copies of documents related to Defendant Flores's interest in or transfer of property from August 25, 2010, to the present, his interest in the same three specific pieces of real property referenced in the interrogatories, and any rental agreements for property in which he had an interest from January 1, 2011, to the present.  (<u>See</u> Docket Entry 405, Attach. 2 at 2-3.)[2]

On August 22, 2011, the Clerk received the instant Letter Motion, signed by Defendant Flores which states, in type-written English, as follows:

> Enclosed, I have returned papers that appear to have been sent by the United States on behalf of the Court.
>
> I do not understand these papers.  My English is limited, my attorney spoke Spanish, and there were Spanish translators at my Court hearings and debriefings.  A fellow inmate is assisting me with this letter (as it does not involve personal information).
>
> <u>To the extent this represents a continuation of my criminal case, or a civil action initiated by the Department of Justice, please accept this as a letter motion for the appointment of a Spanish translator, and for the appointment of counsel, to assist and represent me during this proceeding.</u>
>
> I am not knowledgable in law or legal procedure.  Nor am I an expert on finances or real estate. I am now indigent and my incarceration prevents me from accessing records

---

[1] Defendant Flores's arrest in this case occurred on August 25, 2010.  (<u>See</u> Docket Entry dated Aug. 25, 2010.)

[2] Some information about Defendant Flores's interest in real property (including rental property) became a matter of public record at his sentencing.  (<u>See</u> Docket Entry 392 at 22, 24, 35-40.)

and personal papers. Finally, these proceedings could
adversely affect my wife and children.

In light of the complexity of the documents and the
interests of other individuals and their rights, I
respectfully request this Honorable Court grant the
appointment of counsel and a translator to address the
additional proceedings initiated by the United States.

(Docket Entry 405 at 1 (emphasis added).)

The United States subsequently filed a response indicating

that it had the responsibility for collecting Defendant Flores's

unpaid fine[3] and that, in furtherance of said objective, it had

served Defendant Flores with the interrogatories and document

requests at issue, "after notification by defense counsel Jason

Goins, that he did not represent Defendant Flores in the collection

matters." (Docket Entry 407 at 2.)[4] In that response, the United

_____

[3] According to the United States, as of December 16, 2011,
"[n]o payment ha[d] been made towards the special assessment or
fine." (Docket Entry 407 at 1.) Neither party has since given
notice of any material change in that regard. (See Docket Entries
dated Dec. 16, 2011, to present.)

[4] At the start of the case, the Court appointed counsel for
Defendant Flores (see Docket Entry dated Aug. 27, 2010), but, when
he retained Goins (see Docket Entry 47), the Court allowed
appointed counsel to withdraw (see Docket Entry dated Sept. 1,
2010). Following entry of the Judgment in this case, Goins filed
a Notice of Appeal for Defendant Flores, which contained a
"request[] that the court appoint counsel to represent [Defendant
Flores] in this appeal." (Docket Entry 334 at 1.) The United
States Court of Appeals for the Fourth Circuit subsequently granted
Defendant Flores's application for pauper status, United States v.
Flores, No. 11-4589, Docket Entry 7 (4th Cir. July 21, 2011)
(unpublished), and appointed Goins to handle the appeal, United
States v. Flores, No. 11-4589, Docket Entry 8 (4th Cir. July 21,
2011) (unpublished). As of April 26, 2012, that appeal (in which
Defendant Flores challenges only the reasonableness of his prison

States declared that it "ha[d] no objection to the appointment of counsel or a translator to assist Defendant Flores in addressing the discovery propounded by the United States," but offered no authority that would provide a basis for such appointments. (Id.)

## DISCUSSION

"The United States may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law." 18 U.S.C. § 3613(a).[5] Under federal law, "[a] money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution — and in proceedings supplementary to and in

---

sentence, see Appellant's Brf., United States v. Flores, No. 11-4589 (4th Cir.) (filed Jan. 6, 2012)) remains pending. See Docket, United States v. Flores, No. 11-4589 (4th Cir.).

[5] In other words, "[w]hen the criminal judgment was entered against [Defendant Flores], the United States became a judgment creditor." United States v. Cox, No. 3:05CR92, 2008 WL 2397615, at *3 (W.D.N.C. June 10, 2008) (unpublished). Section 3613 "does not, however, require that the [United States] bring a separate civil suit [to vindicate its interest]." United States v. Scarboro, 352 F. Supp. 2d 714, 716 (E.D. Va. 2005); see also United States v. Idema, 118 Fed. Appx. 740, 743 (4th Cir. 2005) ("[The defendant] has offered no principled basis – and we have found none – to prohibit the government from seeking to enforce this restitution order against him in the same criminal case in which it was originally imposed."); United States v. Woods, Nos. 5:05CR131FL1 & 2, 2010 WL 2465244, at *1 (E.D.N.C. June 17, 2010) (unpublished) ("Although defendants have resisted the government's efforts [to collect on the criminal judgment], believing them to be an improper extension of their criminal case, the Fourth Circuit recently affirmed this court's orders allowing the government to proceed in this docket, without filing a separate civil action." (citing United States v. Woods, 377 Fed. Appx. 311 (4th Cir. 2010))).

aid of judgment or execution — must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."  Fed. R. Civ. P. 69(a)(1).

The relevant federal statute, the Federal Debt Collection Procedures Act, 28 U.S.C. §§ 3001 et seq., provides that, in seeking to enforce a judgment, "the United States may have discovery regarding the financial condition of the debtor in the manner in which discovery is authorized by the Federal Rules of Civil Procedure in an action on a claim for a debt."  28 U.S.C. § 3015(a); see also Fed. R. Civ. P. 69(b) ("In aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person — including the judgment debtor — as provided in these rules [i.e., the Federal Rules of Civil Procedure] . . . .").  The United States thus properly has served Defendant Flores with discovery demands pursuant to the Federal Rules of Civil Procedure. Defendant Flores, however, has not shown (and the Court has failed to identify) any basis for appointment of counsel or a translator to assist Defendant Flores in responding to those discovery demands (or in otherwise defending against the efforts of the United States to enforce the criminal monetary judgment entered in this case).

Appointment of Counsel under 18 U.S.C. § 3006A

"The established rule is that the expenditure of public funds is proper only when authorized by Congress, not that public funds

may be expended unless prohibited by Congress." <u>United States v. MacCollom</u>, 426 U.S. 317, 321 (1976) (plurality) (discussing authority of federal courts to provide free transcripts to defendants). "Where Congress has addressed the subject . . . and authorized expenditures where a condition is met, the clear implication is that where the condition is not met, the expenditure is not authorized." <u>Id.</u> Congress has addressed the subject of "representation of defendants" in the Criminal Justice Act ("CJA"), which mandates that "[e]ach United States district court, with the approval of the judicial council of the circuit, shall place in operation throughout the district a plan for furnishing representation for any person financially unable to obtain adequate representation <u>in accordance with this section</u>." 18 U.S.C. § 3006A(a) (emphasis added); <u>see also</u> 18 U.S.C. § 3006A(i) ("There are authorized to be appropriated to the United States courts, out of any money in the Treasury not otherwise appropriated, sums necessary to carry out the provisions of this section . . . .").

The CJA specifies ten circumstances as to which, under each district plan, "[r]epresentation <u>shall</u> be provided for any financially eligible person," i.e., where the person:

> (A) <u>is charged with a felony or a Class A misdemeanor</u>;
>
> (B) is a juvenile alleged to have committed an act of juvenile delinquency as defined in section 5031 of this title;

7

(C) is charged with a violation of probation;

(D) is under arrest, when such representation is required by law;

(E) is charged with a violation of supervised release or faces modification, reduction, or enlargement of a condition, or extension or revocation of a term of supervised release;

(F) is subject to a mental condition hearing under chapter 313 of this title;

(G) is in custody as a material witness;

(H) is entitled to appointment of counsel under the sixth amendment to the Constitution;

(I) faces loss of liberty in a case, and Federal law requires the appointment of counsel; or

(J) is entitled to the appointment of counsel under section 4109 of this title.

18 U.S.C. § 3006A(a)(1) (emphasis added).  It further declares that, when "the interests of justice so require, representation may be provided for any financially eligible person who— (A) is charged with a Class B or C misdemeanor, or an infraction for which a sentence to confinement is authorized; or (B) is seeking relief under section 2241, 2254, or 2255 of title 28."  18 U.S.C. § 3006A(a)(2) (emphasis added).  Finally, as to the "[d]uration . . . of appointments," the CJA states that "a person for whom counsel is appointed shall be represented at every stage of the proceedings from his initial appearance . . . through appeal,

including ancillary matters appropriate to the proceedings." 18 U.S.C. § 3006A(c) (emphasis added).

None of the above-quoted mandatory or discretionary appointment circumstances in 18 U.S.C. § 3006A(a) facially encompass post-conviction, criminal monetary judgment collection activity of the sort for which Defendant Flores now seeks appointed counsel. Accordingly, the CJA permits appointment of counsel in this instance only if such collection litigation constitutes "ancillary matters," 18 U.S.C. § 3006A(c), as to which Defendant Flores's right to appointed counsel as a result of being "charged with a felony," 18 U.S.C. § 3006A(a)(1)(A), would have continuing "duration," 18 U.S.C. § 3006A(c). The Court concludes that, within the meaning of the CJA, the collection litigation underway (or contemplated) in this case does not qualify as "ancillary matters" to Defendant Flores's now-concluded felony prosecution.

In reaching that conclusion, the Court first observes that the mere fact that the instant civil discovery (and other potential collection activity) proceeds in some sense from Defendant Flores's drug conspiracy prosecution does not mean that, for purposes of the CJA, the Court must treat said matters as "ancillary" to that prosecution. Interpreting "ancillary matters" under the CJA to include all litigation that arises in any manner from felony and Class A misdemeanor prosecutions would make redundant the CJA's

provision that requires appointed counsel for supervised release revocation proceedings, 18 U.S.C. § 3006A(a)(1)(E), because such proceedings can arise only from felony and Class A misdemeanor prosecutions. See 18 U.S.C. §§ 3559(a)(6) (classifying any offense punishable by more than one year as a "felony" and any offense punishable by "one year or less but more than six months, as a Class A misdemeanor"), 3583(b) (authorizing supervised release terms only for felonies and "misdemeanor[s] (other than a petty offense)"); Lewis v. United States, 518 U.S. 322, 326 (1996) ("An offense carrying a maximum prison term of six months or less is presumed petty . . . ."). [6] Similarly, given that the CJA mandates or permits appointment of counsel for all prosecutions which can result in confinement, see 18 U.S.C. § 3006A(a)(1)(A) & (2)(A), if the term "ancillary matters" encompassed all litigation stemming from such prosecutions (such that during said litigation the pre-existing right or option for appointed counsel would continue), no reason would exist for the CJA provision authorizing appointed counsel in Section 2255 proceedings (i.e., 18 U.S.C. § 3006A(a)(2)(B)), because such proceedings only occur when a "prisoner in custody under sentence of a court established by Act

---

[6] In other words, if Congress meant the term "ancillary matters" (as to which an existing right to appointed counsel would remain) to cover all litigation connected to felony or Class A misdemeanor prosecutions, Congress would not have needed to specify that supervised release revocation proceedings trigger a right to appointment of counsel.

of Congress" challenges the lawfulness of the underlying federal conviction or sentence, 28 U.S.C. § 2255(a).

The foregoing considerations strongly militate against any construction of the term "ancillary matters" under the CJA that effectively would treat all litigation that flows in some fashion from a felony prosecution as an "ancillary matter." See Scott v. United States, 328 F.3d 132, 139 (4th Cir. 2003) ("Where possible, we must . . . avoid any interpretation that may render statutory terms meaningless or superfluous.").  In addition, support for the view that civil discovery and collection activity do not constitute "ancillary matters" as to which Defendant Flores has a continuing right to appointed counsel comes from the Court's CJA Plan, which expressly adopts the definition of "ancillary matters" set out "in the CJA regulations," Plan for Furnishing Representation and Servs. pursuant to the Crim. Justice Act of 1964, at 12 (M.D.N.C. May 11, 1993), approved, In the Matter of the Review of the Amend. to the Plan of the U.S. Dist. Ct. for the M.D.N.C. in Implementation of the Crim. Justice Act (4th Cir. Jud. Council June 4, 1993).

Regarding "ancillary matters," the "CJA regulations" state:

(b)     In determining whether a matter is ancillary to the
        proceedings, the court should consider whether the
        matter, or the issues of law or fact in the matter,
        arose from, or are the same as or closely related
        to, the facts and circumstances surrounding the
        principal criminal charge.

11

(c) In determining whether representation in an ancillary matter is appropriate to the proceedings, the court should consider whether such representation is reasonably necessary to accomplish, among other things, one of the following objectives:

> (1) to protect a <u>Constitutional right</u>;
>
> (2) to contribute in some significant way to the <u>defense of the principal criminal charge</u>[;]
>
> (3) to aid in <u>preparation for the trial or disposition of the principal criminal charge</u>;
>
> (4) to enforce the terms of <u>a plea agreement in the principal criminal charge</u>;
>
> (5) to preserve the claim of the CJA client to an interest in real or personal property subject to a <u>civil forfeiture proceeding</u> under 21 U.S.C. § 881, 19 U.S.C. § 1602 or similar statutes, <u>which property, if recovered by the CJA client, may be considered for reimbursement under 18 U.S.C. § 3006A(f) and Guide, Vol 7A, § 210.40.30</u>; or
>
> (6) to effectuate the return of real or personal property belonging to the CJA client which may be subject to a <u>motion for return of property</u> under Fed. R. Crim. P. 41(e), <u>which property, if recovered by the CJA client, may be considered for reimbursement under 18 U.S.C. § 3006A(f) and Guide, Vol 7A, § 210.40.30</u>.

<u>Guide to Jud. Pol'y</u>, Vol. 7A, Ch. 2, § 210.20.30 (emphasis added).[7]

---

[7] "The Guide codifies promulgations of both the Judicial Conference of the United States and the Director of the Administrative Office. Part A, Chapter 2, of the Volume 7 of the Guide, promulgated by the Judicial Conference of the United States,

The matter of Defendant Flores's financial condition, including his interest in personal and real property, as to which the United States seeks discovery in aid of its efforts to collect a monetary judgment, neither "ar[ises] from" nor is "the same as or closely related to, the facts and circumstances surrounding the principal criminal charge," id. § 210.20.30(b) (emphasis added), i.e., the facts and circumstances surrounding the underlying drug conspiracy. Indeed, at sentencing, Defendant Flores explicitly argued that, for all but a brief time during which he participated in activities that led to his instant conviction, he maintained legitimate employment through which he and his family acquired the property at the center of the collection-related discovery underway in this case. (See Docket Entry 392 at 21-24.)

Further, representation for the ongoing collection litigation is not "reasonably necessary," Guide to Jud. Pol'y, Vol. 7A, Ch.2, § 210.20.30(c):

1) "to protect a Constitutional right," id. § 210.20.30(c)(1), because discovery of Defendant Flores's financial condition under the Federal Rules of Civil Procedure (and other civil litigation to enforce a monetary judgment under federal law) does not threaten

---

addresses eligibility for CJA representation." United States v. Duran-Moreno, 638 F. Supp. 2d 1302, 1304 (D.N.M. 2009); see also United States v. Gonzales, 150 F.3d 1246, 1258 (10th Cir. 1998) (recognizing that Judicial Conference and Administrative Office have authority to implement provisions of CJA).

Defendant Flores's rights under the Constitution, particularly where such matters have no material connection to the underlying drug conspiracy, where Defendant Flores has pleaded guilty to the drug conspiracy and has appealed only the reasonableness of his prison sentence, and where information about his property interests became matters of public record at his sentencing;

2) "to contribute in some significant way to the defense of . . . [or] to aid in preparation for the trial or disposition of the principal criminal charge," id. § 210.20.30(c)(2) & (3), because discovery about Defendant Flores's financial condition and other collection litigation has no material connection to the drug conspiracy charged in this case and because Defendant Flores has pleaded guilty to the charged drug conspiracy and has appealed only the reasonableness of his prison sentence;

3) "to enforce the terms of a plea agreement in the principal criminal charge," id. § 210.20.30(c)(4), because Defendant Flores's plea agreement in this case (Docket Entry 222) does not address anything related to the rights of the United States to pursue discovery regarding his financial condition or otherwise to engage in collection activity; or

4) "to preserve the claim of [Defendant Flores] to an interest in real or personal property subject to a civil forfeiture proceeding . . . [or] to effectuate the return of real or personal

14

property belonging to [Defendant Flores] which may be subject to a motion for return of property under Fed. R. Crim. P. 41(e), which property, if recovered by [Defendant Flores], may be considered for reimbursement under [the CJA]," Guide to Jud. Pol'y, Vol. 7A, Ch. 2, § 210.20.30(c)(5) & (6), because the United States has not instituted a civil forfeiture proceeding, Defendant Flores has no basis to pursue a motion for return of property, and Defendant Flores does not seek to retain property for purposes of using it to reimburse any previously-incurred CJA costs.

In sum, the definition of "ancillary matters" in the CJA regulations adopted in this Court's CJA Plan precludes appointment of counsel for Defendant Flores in connection with civil discovery and activities related to the collection of his criminal monetary judgment. Moreover, a review of the legislative history of the CJA also counsels against any reading of its reference to "ancillary matters" as including the instant civil discovery and potential collection litigation, as this analysis by another court shows:

> [T]he House Report accompanying Pub.L. 91-447, the bill which extended representation under section 3006A to include "ancillary matters," stated:
>
>> Subsection (c) would not only provide for appointed counsel at every stage of the trial from initial appearance through appeal, but also for "ancillary matters appropriate to the proceedings." This provision is necessary to insure that the rights of the person are fully protected. Many times remedies technically outside the scope of the trial proper may be

15

> necessary, such as using a habeas corpus ad
> testificandum to secure the presence or
> testimony of witnesses, or filing an
> application under 18 U.S.C. 4244 regarding
> competency to stand trial. The express
> inclusion of "ancillary matters appropriate to
> the proceedings" will insure that the attorney
> who spends time and effort to protect a right
> considered valuable in defending the principal
> criminal charge can be compensated under the
> act.
> Unlike the trial-related examples enumerated in the House
> Report, the proceedings for which Lindsey seeks
> assistance are not procedural mechanisms employed within
> the context of a federal action to insure the protection
> of a person's rights in that action.

In re Lindsey, 875 F.2d 1502, 1508 (11th Cir. 1989) (internal

brackets, citations, and ellipses omitted) (emphasis added)

(quoting H.R. Rep. No. 1546, 91st Cong., 2d Sess., reprinted in,

1970 U.S. Code Cong. & Admin. News 3982, 3989).

Finally, a number of courts have declined to hold that the

CJA's "ancillary matters" provision affords a basis to appoint

counsel for post-conviction matters analogous to the collection

activity at issue in this case. See, e.g., United States v. Davis,

400 Fed. Appx. 538, 540-41 (11th Cir. 2010) ("Davis's motion to

modify or correct a restitution order imposed nearly ten years

earlier was not comprehended within the original action and is

therefore not 'ancillary' to that proceeding. Consequently,

§ 3006A does not provide a statutory right to counsel in this

case."); United States v. Pedro, No. CR-06-0513-PHX-ROS(LOA), 2011

WL 2262226, at *3 (D. Ariz. May 16, 2011) (unpublished) ("There is

no provision in the Criminal Justice Act which authorizes the appointment of an attorney to represent Pedro in a post-judgment civil garnishment hearing arising out of a restitution order."). For all the reasons previously discussed, this Court likewise rules that the term "ancillary matters" under the CJA does not reach the litigation as to which Defendant Flores seeks representation.

<u>Appointment of Counsel under 28 U.S.C. § 1915(e)(1)</u>

Some courts that have found a defendant ineligible under the CJA for appointment of counsel to assist with post-conviction litigation related to a criminal monetary judgment have looked to the In Forma Pauperis statute, 28 U.S.C. § 1915, as a possible alternative mechanism for enlisting representation for the defendant as to such matters. <u>See, e.g.</u>, <u>Allen v. United States</u>, No. 5:07CV1132NAM/GJD, 2007 WL 3197472, at *2 (N.D.N.Y. Oct. 24, 2007) (unpublished). Under said statute, a "court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1).[8] This provision, however, does not grant

---

[8] "The statute says that a judge may 'request' that an attorney represent a litigant . . . and so 'appointment of counsel' is actually a polite way of saying that the district judge calls multiple attorneys in an effort to get one of them to take a case for no pay." <u>Gruenberg v. Gempeler</u>, 740 F. Supp. 2d 1018, 1020 n.1 (E.D. Wis. 2010); <u>see also</u> <u>Clarke v. Blais</u>, 473 F. Supp. 2d 124, 125 (D. Me. 2007) (observing that, for appointments under 28 U.S.C. § 1915(e)(1), "there are no funds appropriated to pay a lawyer or even to reimburse a lawyer's expenses").

litigants who qualify as paupers "an absolute right to appointment of counsel." Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987).

Instead, under the pauper statute, the decision about whether a judicial official should take steps to secure counsel for a litigant constitutes "a matter within the discretion of the District Court." Bowman v. White, 388 F.2d 756, 761 (4th Cir. 1968). In delineating the scope of that discretion, the United States Court of Appeals for the Fourth Circuit has held that a litigant "must show that his case is one with exceptional circumstances." Miller, 814 F.2d at 966 (citing Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975)). "The question of whether such circumstances exist in any particular case hinges on characteristics of the claim and the litigant." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated in part on other grounds, Mallard v. United States Dist. Ct. for S.D. of Iowa, 490 U.S. 296 (1989).[9] More pointedly, "[i]f it is apparent to the

_____

[9] In Mallard, the United States Supreme Court ruled that a court could not make "compulsory assignments of attorneys" pursuant to the provision in 28 U.S.C. § 1915 (then codified at subsection (d), now set out in subsection/paragraph (e)(1)) stating that a "'court may request an attorney to represent' an indigent litigant," Mallard, 490 U.S. at 300-01 (holding that statute's use of word "request" means that courts may ask, but may not command, attorneys to represent civil litigants). The Supreme Court also declined to "express an opinion on the question whether the federal courts possess inherent authority to require lawyers to serve." Id. at 310. In the absence of controlling authority recognizing any such inherent authority, if this Court determined that a litigant should receive assistance of counsel in a matter for which appointment (and thus compensation) under the CJA was not

district court that a pro se litigant has a <u>colorable</u> claim but <u>lacks the capacity to present it</u>, the district court should appoint counsel to assist him." <u>Gordon v. Leeke</u>, 574 F.2d 1147, 1153 (4th Cir. 1978) (emphasis added).

In this case, it is <u>not</u> "apparent," <u>id.</u>, that Defendant Flores has a defense to the instant civil discovery (or other possible collection litigation) that one could describe as "colorable," <u>id.</u> Nor (to the extent Defendant Flores has any such defense), is it "apparent . . . [he] lacks the capacity to present it," <u>id.</u>[10] Accordingly, the Court declines, under 28 U.S.C. § 1915(e)(2), to solicit an attorney to represent Defendant Flores at this time. He

_____

available, the Court would seek out an attorney willing to provide representation on a pro bono basis.

[10] On this point, the Court notes that, although Defendant Flores has described his ability to communicate in English as "limited" (Docket Entry 405 at 1), at his sentencing hearing, his counsel pointed out that Defendant Flores obtained a "certification of completion of a technical class in scaffolding . . . [and] had to learn a fair amount of English and understanding of the language in order to do that" (Docket Entry 392 at 23). Further, by his own admission, Defendant Flores successfully secured assistance preparing his instant Letter Motion, a cogent, type-written, English-language document. (<u>See</u> Docket Entry 405 at 1.) Finally, Defendant Flores has family members out of custody who could aid him in complying with the discovery demands by the United States and otherwise defending any collection litigation (including by soliciting translation support and gathering necessary documents). (<u>See</u> Docket Entry 392 at 23; Docket Entry 405 at 1.) Indeed, Defendant Flores has acknowledged that those individuals arguably have a greater interest in ensuring the presentation of any viable defense against enforcement of the criminal monetary judgment against his property than he does. (<u>See</u> Docket Entry 405 at 1.)

remains free to file a future motion under 28 U.S.C. § 1915(e)(1), if circumstances change or considerations not now apparent exist.

<u>Appointment of a Translator under 28 U.S.C. § 1827</u>

In his instant Letter Motion, Defendant Flores complains that he "do[es] not understand these papers [i.e., the discovery demands he received from the United States]." (Docket Entry 405 at 1.) After noting that his "English is limited" (<u>id.</u>), Defendant Flores concludes his instant Letter Motion by stating: "In light of the complexity of the documents . . ., I respectfully request this Honorable Court grant the appointment of counsel and a translator to address the additional proceedings initiated by the United States." (<u>Id.</u>) "[The CJA] states that counsel for a person 'who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application.' 18 U.S.C. § 3006A(e)(1). Thus, . . . it appears that an attorney appointed under the CJA may move for the translation of documents if they are necessary for adequate representation." <u>United States v. Wattanasiri</u>, No. 97-1380, 141 F.3d 1152 (table), 1998 WL 105769, at *2 (2d Cir. Mar. 9, 1998) (unpublished). However, where (as here) no grounds exist for appointment of counsel under the CJA, the only other <u>possible</u> source of authority for court-paid translation assistance appears to lie in the Court Interpreters Act, 28 U.S.C. § 1827.

Said statute provides for the Court to make available a "certified _interpreter_, or when no certified interpreter is reasonably available, . . . an otherwise qualified _interpreter_, in _judicial proceedings instituted by the United States_, if . . . [a] party . . . speaks only or primarily a language other than the English language . . . so as to inhibit such party's comprehension of the proceedings or communication with counsel or the presiding judicial officer . . . ." 28 U.S.C. § 1827(d)(1) (emphasis added); see also 28 U.S.C. § 1827(c)(2) ("The clerk of the court, or other court employee designated by the chief judge, shall be responsible for securing the services of certified interpreters and otherwise qualified interpreters required for proceedings initiated by the United States, except that the United States attorney is responsible for securing the services of such interpreters for governmental witnesses."). "The term 'judicial proceedings instituted by the United States' as used in this section refers to all proceedings, whether criminal or civil, including pretrial and grand jury proceedings . . . conducted in, or pursuant to the lawful authority and jurisdiction of a United States district court." 28 U.S.C. § 1827(j); see also Guide to Jud. Pol'y, Vol. 5, Ch.2, § 210.10 ("Judicial proceedings instituted by the United States include all _in-court_ criminal proceedings and any _in-court_ civil proceeding in which the United States is the plaintiff."

(emphasis added)). In addition, the Court Interpreters Act states that generally "[t]he interpretation provided by certified or otherwise qualified interpreters pursuant to this section shall be in the simultaneous mode for any party to a judicial proceeding instituted by the United States . . . ." 28 U.S.C. § 1827(k).

This last cited provision indicates that the Court Interpreters Act does not apply to document translation services of the sort Defendant Flores seeks. More specifically, subsection k of the Court Interpreters Act indicates that said statute follows this convention: "An interpreter as normally understood is a person who translates living speech from one language to another. He is a type of translator, but the translator of a document is not referred to as an interpreter." <u>Extra Equip. E Exp. Ltda. v. Case Corp.</u>, 541 F.3d 719, 727 (7th Cir. 2008) (Posner, J.) (observing that "Robert Fagles made famous translations into English of the Iliad, the Odyssey, and the Aeneid, but no one would refer to him as an English-language 'interpreter' of these works"). A plain meaning approach to construction of the Court Interpreters Act thus supports differentiation between an "interpreter" (of speech) and a "translator" (of writing), particularly given the specific language of subsection k which reflects that Congress clearly intended that distinction to apply to the Court Interpreters Act. As a result, this Court is (as Judge Posner expressed it in

construing another statute) "reluctant to interpret 'interpreters' loosely to include translators of written documents," id.

In addition, even if the Court Interpreters Act applied to the services Defendant Flores solicits, at this point, the Court has scheduled no "proceedings" (much less "in-court" proceedings) related to the efforts of the United States to collect his criminal monetary judgment.[11] Moreover, because the collection activity by the United States currently only involves civil discovery demands, it does not meet the traditional definition of a "judicial proceeding." See Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1311 (11th Cir. 2001) (describing "common-law right of access to judicial proceedings . . . [as] includ[ing] the right to inspect and copy public records and documents," but explaining that for "discovery material . . . there is no common-law right of access, as these materials are neither public documents, nor judicial records" (emphasis added)). The Court thus cannot conclude that Defendant Flores currently faces "judicial proceedings instituted by the United States," 28 U.S.C. § 1827(d)(1), of the sort necessary to trigger the Court's obligation to provide services under the Court Interpreters Act.

---

[11] This fact also renders inapplicable the Federal Rule of Civil Procedure that provides for appointment of an interpreter for the taking of testimony in connection with a trial or motion hearing. See Fed. R. Civ. P. 43.

Under these circumstances, the Court finds no basis to allow Defendant Flores's request for a translator.

<u>CONCLUSION</u>

The CJA does not permit the Court to appoint counsel for Defendant Flores for post-conviction litigation regarding his criminal monetary judgment. Nor has Defendant Flores shown exceptional circumstances warranting judicial assistance in securing him representation via the In Forma Pauperis statute. As a final matter, Defendant Flores has not established that he qualifies for appointment of a translator under the Court Interpreters Act.

**IT IS THEREFORE ORDERED** that Defendant Flores's "Letter Motion for Translator and Counsel" (Docket Entry 405) is **DENIED**.

This the 27th day of April, 2012.

_/s/ L. Patrick Auld_
**L. Patrick Auld**
**United States Magistrate Judge**
